Cavanagh, J.
(concurring in part and dissenting in part). The majority holds that plaintiffs’ equitable claims are barred by the clean hands doctrine and in so doing affirms the trial court’s order awarding the commission to defendants. The majority also holds that plaintiffs’ negligence claim must fail because no duty to conduct the auction in a negligent-free fashion was owed to plaintiffs, and that plaintiffs’ breach of fiduciary duty claim cannot stand because it was unreasonable as a matter of law for the plaintiffs to believe defendants would execute an unlawful scheme. I agree that plaintiffs are barred from recovery on their equitable contract claims asserting fraud and misrepresentation. However, I would reverse the trial court’s award of commission. Further, I think it is clear that defendants owed a fiduciary duty to plaintiffs and thus the negligent auctioneer claim should not be dismissed. Therefore, I respectfully dissent.
I
Plaintiffs’ claims arise from a contract that is void as against public policy. Courts may grant one party restitution even though such an agreement violates public policy. II Farnsworth, Contracts, § 5.9, pp 75-76. This is rare because courts often leave parties as they find them when they enter into an illegal contract. Exceptions are made (1) where forfeiture would disproportionately affect a party whose conduct does not warrant such a harsh result, (2) where a claimant may be excusably ignorant of facts that *472 the other party is not, or (3) where the parties are not equally wrong. Id. at 76-78. I agree with these principles and would hold that the parties should be left where the courts found them. Because this is an illegal contract, I would reverse the trial court’s award of $29,050 in commission to defendants. It is not just to deny all relief to plaintiffs and simultaneously award the defendants their commission when they are arguably more culpable than the plaintiffs, if the alleged facts are found true. The defendants allegedly tricked their principal (the plaintiffs) by concocting an illegal shill scheme. That the defendants failed to execute the alleged scheme does not make them less culpable. The majority attempts to do justice by applying principles of equity, but fails by dismissing the effect of the trial court’s decision to order payment of the commission.[1] Therefore, I would hold that the trial court abused its discretion in awarding the defendants their commission.
If the defendants wish to file an action to recover the commission, a factfinder must first determine whether the alleged shill scheme was used to induce the plaintiffs to go forward with the auction. If the evidence presented convinces the factfinder that defendants acted unlawfully or without good faith, the defendants’ claim for commission should be barred.
*473 II
The majority confidently asserts no duty is owed to plaintiffs because the public policy prohibiting shill bids is concerned only with the treatment of bidders. This proposition erroneously assumes the auctioneer’s duty is exclusive.
Under Michigan law, a fiduciary relationship will arise “only when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another.” In re Jennings Estate, 335 Mich 241, 244; 55 NW2d 812 (1952). Other courts have applied this fundamental concept to hold that auctioneers owe fiduciary duties to their principals. In Cristallina, SA v Christie, Manson & Woods Intl, Inc, 117 AD2d 284, 292; 502 NYS2d 165 (1986), the court held:
The auctioneer is the agent of the consignor. As an agent, Christie’s had a fiduciary duty to act in the utmost good faith and in the interest of Cristallina, its principal, throughout their relationship. When a breach of that duty occurs, the agent is hable for damages caused to the principal, whether the cause of the action is based on contract or on negligence. [Citations omitted.]
Similarly, in Greenwood v Koven, 880 F Supp 186, 194 (SD NY, 1995) citing, inter aha, Restatement 2d, Agency, ch 1, § 13 (1958) (“An agent is a fiduciary with respect to matters within the scope of his agency”), the court held:
To begin with, it is indisputable that Christie’s acted in the capacity of an agent on behalf of Koven. It' is also clear that an agent such as Christie’s is required under the law to act in a fiduciary capacity on behalf of its principal.
*474 Several treatises assert the same.
It is also the duty of the auctioneer to maintain and exercise the utmost loyalty and good faith to his principal. He must not acquire or have antagonistic interests. He must not deal with the property on his own account without his principal’s full knowledge and consent. He must not avail himself of his situation to make profit for himself at his principal’s expense, and he must give the principal timely notice of any matters coming to his knowledge material for the principal to know for the protection of his interests. [2 Mechem, Agency (1914), § 2334, p 1918.]
Another class of agents are Auctioneers, of whom I shall merely observe here, that they are considered as agents for both parties, so that writing down the name of a purchaser at a sale is sufficient memorandum within the statute of frauds, and binds both buyer and seller. But this must be taken secundum subjectam materiam; for though he is agent to some pmposes, he is not so to all. He is an agent to each party in different things, but not in the same things. When he prescribes the rules of bidding, and the terms of the sale, he is the agent of the seller; but when he puts down the name of buyer, he is agent for him only. [1 Livermore, Principal & Agent and Sales by Auction, (1986 reprint), p 77 (emphasis added).]
According to these principles, it is clear that an auctioneer has the power to bind the seller while exercising total control over the seller’s property interest during the auction. Thus, an auctioneer’s powers provide him with a significant amount of control and discretion, creating a duty on the part of the auctioneer to act with loyalty and in good faith toward his principal. Therefore, with regard to matters within the scope of their relationship, the defendants owed a duty to the plaintiffs.
Unlike the majority, I cannot conclude as a matter of law that the plaintiff did not reasonably rely on the *475 defendants to lawfully and in good faith communicate with him about the impending auction. After learning of plaintiff’s intention to withdraw the property from the auction block, the defendants allegedly induced the plaintiff to go forward by offering to illegally rig the event. Thus, I would permit the trier of fact to determine the reasonableness of Mr. Rose’s reliance on the alleged offer.
The holding of the Court of Appeals on the negligence claim should, therefore, be affirmed. Nonetheless, the wisdom of pursuing the issue rests with the plaintiffs as they should consider the effect of comparative negligence on their claim.
III
For the reasons stated above, I would reverse the trial court’s order awarding defendants’ commission. In addition, I would affirm the judgment of the Court of Appeals reversing the trial court’s order granting summary disposition to defendants on the negligent auctioneer claim. In all other respects, I concur with the majority.
Kelly, J., concurred with Cavanagh, J.

 The majority erroneously concludes that the second agreement is wholly separate from the original contract, and that the original contract remains legally enforceable and untainted by the shill scheme. This ignores the fact that, as a result of the alleged shill offer, Mr. Rose refrained from exercising his right to withdraw his property from the auction as permitted by the original contract. To conceive of the parties’ agreements separately fails to recognize the true nature of the alleged shill offer and leads to an unjust result.